595 So.2d 745 (1992)
Mary CANNON
v.
ALLSTATE INSURANCE COMPANY.
No. 91-CA-1197.
Court of Appeal of Louisiana, Fourth Circuit.
February 25, 1992.
Writ Denied May 8, 1992.
*746 Mark S. Goldstein, Howard, Laudumiey, Mann, Reed & Goldstein, New Orleans, for plaintiff/appellant.
David J. Mitchell, Dan Richard Dorsey, Porteous, Hainkel, Johnson & Sarpy, New Orleans, for defendant/appellee.
Before BARRY and CIACCIO, JJ., and GULOTTA, J. Pro Tem.
BARRY, Judge.
Mary Cannon appeals a summary judgment granted to Allstate Insurance Co., her uninsured motorist carrier, which dismissed her underinsured motorist claim for damages.

FACTS AND PROCEEDINGS
Mr. and Mrs. Cannon owned 1984 and 1978 Cadillacs which were insured by Allstate for liability and UM coverage. Mrs. Cannon was a passenger in the 1984 Cadillac which was being driven by Mr. Cannon (deceased) who lost control of the vehicle and ran into a dumpster. Her injuries allegedly exceeded Allstate's liability limit of $10,000 which was paid. Mrs. Cannon sued Allstate claiming underinsured coverage on the 1978 Cadillac.
Mrs. Cannon filed for a partial summary judgment and argued that the UM coverage in her Allstate policy was applicable to her injuries, that Allstate could not deny coverage without her written waiver, and the anti-stacking rules do not apply.[1]
Allstate filed for summary judgment on the basis that its policy did not allow recovery under the liability and UM provisions when a single car accident was caused by the policy holder (Mr. Cannon). Allstate's statement of uncontested facts are:
1) It issued a policy for automobile liability insurance to Mary and Adrian Cannon covering a 1984 Cadillac and a 1978 Cadillac with liability limits of $10,000/$20, 000 and UM limits of $10,000/$20,000, effective May 1, 1990 to November 1, 1990;
2) On May 31, 1990 Mary Cannon was a guest passenger in the 1984 Cadillac driven by her husband when they were involved in a single car accident;
3) Allstate paid the $10,000 liability limit.
Allstate argues there is no UM coverage because its policy provides that the uninsured auto was not a motor vehicle defined as an insured automobile under the liability section of the policy.
Allstate attached a copy of its policy and the Louisiana Automobile Policy Amendments rider to the policy. Section IV, Subsection C of the rider relating to uninsured motorist insurance provides in pertinent part (at page 7):
An uninsured auto is not:
* * * * * *
2. a motor vehicle defined as an insured auto under Part 1, Automobile Liability Insurance, of this policy.
In Part I of the policy (page 6) an insured auto is defined as "[a]ny auto described on the declarations page." In Part V relating to uninsured motorists insurance (page 15) an insured auto is defined as "a motor vehicle: (1) described on the declarations page." The declarations page listed the 1984 Cadillac and 1978 Cadillac. In Part V (page 16) the definition of an uninsured auto includes "an underinsured motor vehicle which has liability protection in effect and applicable at the time of the accident but less than the applicable damages the insured person is legally entitled to recover."
Mrs. Cannon specifies four errors:
1) failure to consider that her claim satisfied the UM statutory requirement of Breaux v. GEICO;

*747 2) failure to find that Allstate's UM exclusion violates public policy;
3) failure to recognize that she did not formally reject UM coverage;
4) failure to hold that the UM exclusion made the policy ambiguous.

APPLICABILITY OF BREAUX V. GEICO
Mrs. Cannon attempts to distinguish Breaux v. Government Employees Insurance Company, 369 So.2d 1335 (La.1979). Allstate relies upon that case and its progeny.
In Breaux, Mary Ann Breaux, a guest passenger, was injured in an automobile driven by Gail Ayo, an insured under a GEICO liability policy. After Mary Ann's death due to the accident, Ms. Breaux's parents sued GEICO and their uninsured motorist carrier, Traders and General Insurance Company, because the damages exceeded GEICO's policy limits. Mr. and Mrs. Breaux settled with GEICO, released GEICO from liability under the UM coverage of its policy, and obtained a judgment against Traders. Traders was credited with the amount of GEICO's settlement. The court of appeal reversed and held that Mr. and Mrs. Breaux could recover under both the liability and UM coverage in GEICO's policy. The Supreme Court reversed. The issue was whether GEICO's policy afforded UM coverage to a guest passenger in a vehicle it insured when the negligence of the host driver (its insured) was the sole cause of the accident.
GEICO's policy excluded from the definition of "uninsured automobile" an "insured automobile" which was defined as an automobile listed on the schedule as an insured vehicle to which the bodily injury liability coverage on the GEICO policy applied. The Supreme Court held that the clause which denied UM coverage to Mr. and Mrs. Breaux was valid because it was not in derogation of the mandatory requirements in the UM statute. The Court stated:
As to coverage under the uninsured motorist provisions of a particular policy, the statute thus contemplates two distinct motor vehicles: the motor vehicle with respect to which uninsured motorist coverage is issued and the `uninsured or underinsured' motor vehicle. In addition, as to each policy containing uninsured motorist coverage, the statute distinguishes between the person insured under the policy in question and the owner or operator of the uninsured or underinsured motor vehicle.
Id. 369 So.2d at 1338.
Relying on the language of La.R.S. 22:1406 D, Breaux declared: "It is thus apparent that our uninsured motorist statute does not mandate protection under the host driver's uninsured motorist coverage when the sole cause of the accident is the negligence of the host driver." Id. at 1338-1339. In Nall v. State Farm Mutual Automobile Insurance Company, 406 So.2d 216 (La.1981), the Supreme Court reaffirmed the Breaux holding. See also McKenzie, Louisiana Uninsured Motorist Coverage After Twenty Years, 43 LA. L.REV. 691, 704-707 (1983). Numerous circuit opinions have followed the Breaux and Nall holdings. See, e.g., Moore v. Brumfield, 459 So.2d 21 (La.App. 1st Cir. 1984); Shipp v. State Farm Mutual Automobile Insurance Company, 415 So.2d 582 (La.App. 3rd Cir.1982).
Mrs. Cannon argues that her case differs from Breaux because she seeks to enforce her UM coverage associated with the 1978 Cadillac, the second car insured under the same policy as the 1984 Cadillac involved in the accident. In response, Allstate cites Hasha v. Calcasieu Parish Police Jury, 539 So.2d 779 (La.App. 3rd Cir.1989), writ denied, 541 So.2d 872 (La.1989), where the accident vehicle and two other vehicles were covered under one policy and Breaux was followed. James Hasha was a guest passenger in an automobile owned by his father, Lester, and driven by Sylvia Duke, whose negligence caused the accident and his death. Mr. Hasha's automobile and two others owned by him were covered by Casualty Insurance for liability and uninsured motorist insurance. Casualty paid the liability limits and Mr. and Mrs. Hasha sued claiming uninsured motorist coverage.
*748 The Third Circuit, citing Breaux and Nall, held that Mr. and Mrs. Hasha could not recover under liability and uninsured motorist coverages in the same policy where the host driver's negligence caused the accident. No reference was made to Mr. Hasha's ownership of three cars insured by Casualty and no one argued that a non-accident vehicle could trigger UM coverage. However, the factual situation in Hasha is similar to that here.
Mrs. Cannon has a UM claim only if the accident vehicle was uninsured under Allstate's policy. Mrs. Cannon was in an auto which had liability coverage under the Allstate policy. Breaux also clearly states that the statute distinguishes between the person insured (Mr. and Mrs. Cannon) and the owner or operator of the underinsured vehicle (here Mr. Cannon). Under these facts there is no distinction. Based on Breaux Mrs. Cannon has no UM claim.

PUBLIC POLICY
Allstate's policy exclusion does not violate a public policy relative to spousal suits in Louisiana. A parent is also barred from collecting under UM policy provisions for the death of a child who was in the parent's insured vehicle at the time of an accident. See Shipp, 415 So.2d at 582; Coco v. Allstate Insurance Company, 391 So.2d 50 (La.App. 3rd Cir.1980).
Allstate's policy does not set up a situation where UM coverage depends upon the insured's relationship to the accident vehicle, a situation prohibited by statute and jurisprudence. The facts here are distinguishable from those in Howell v. Balboa Insurance Company, 564 So.2d 298 (La. 1990). Mrs. Cannon's UM coverage is not dependent upon her "use" of the insured car (she owns). In contrast, Mrs. Howell's son was riding in a car not owned or insured by Howell or his mother and covered only while it was "being used" by the insured or a family member.
Equally unpersuasive are Mrs. Cannon's arguments that her premiums were a windfall to Allstate, that the Allstate exclusion affects a spouse's right to direct action, and that the exclusion impermissibly restricts UM coverage (held enforceable in Breaux).

WRITTEN WAIVER
The public policy which prohibits exclusion of UM coverage without a clear written waiver to reject that coverage or lower limits (La.R.S. 22:1406 D(1)) is not relevant. The waiver of UM coverage is not an issue.

AMBIGUITY
Mrs. Cannon argues that two policy provisions are in conflict, ambiguous, and should be construed in favor of coverage.
Allstate's policy, conforming to La.R.S. 22:1406 D(2)(b), defines an uninsured automobile to include an underinsured motor vehicle, among a number of other definitions. However, Section IV of the rider clearly states that an uninsured automobile is not a "motor vehicle defined as an insured auto under Part 1...." A policy provision must be read in light of other pertinent provisions just as part of the uninsured motorist statute must be read together and cannot be interpreted alone. See Breaux, 369 So.2d at 1338; Nall, 406 So.2d at 219.
The policy is not ambiguous. The general provision is narrowed by the specific rider. The rider declares that an uninsured automobile cannot be an insured motor vehicle listed in the policy which is not in derogation of the mandatory requirements in Louisiana's uninsured motorist statute, La.R.S. 22:1406 D. The rider is valid.

CONCLUSION
Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, show there is no genuine issue of material fact. Urbeso v. Bryan, 583 So.2d 114 (La. App. 4th Cir.1991).
There are no material issues of fact and the trial court correctly granted Allstate's summary judgment. The judgment is affirmed.
AFFIRMED.
NOTES
[1] Mrs. Cannon's brief states she addressed the anti-stacking issue in her summary judgment motion, but that issue is not argued on appeal. We note that Mrs. Cannon's partial summary judgment memo referenced several documents which are not in the record.